[Civ. No. 4121. First Appellate District, Division Two.—March 3, 1922.]

## W. L. HATHAWAY, Respondent, v. V. T. McGILLY-CUDDY, Appellant.

[1] PROMISSORY NOTES—CONSIDERATION—DELIVERED CORPORATION STOCK —SUFFICIENCY OF EVIDENCE.—In this action to recover upon promissory notes which the defendant claimed were given without consideration, the finding that the notes were executed and delivered as and for the purchase price of certain corporation stock which the plaintiff caused to be delivered to the defendant is supported by the evidence, notwithstanding evidence that the delivered shares were to be a gift and that other and additional shares were to be delivered for the notes.

APPEAL from a judgment of the Superior Court of Alameda County. A. F. St. Sure, Judge. Modified and affirmed.

56 Cal. App.—44

The facts are stated in the opinion of the court.

James A. Ballentine and Leo J. McEnerney for Appellant.

John Douglas Short and Knight, Boland, Hutchinson & Christin for Respondent.

LANGDON, P. J.—This is an appeal by the defendant from a judgment against him for five thousand dollars and interest, upon two promissory notes.

Defendant's answer admits the execution of the notes, but alleges that they were delivered to the plaintiff without the authority of the maker and contrary to his express direction; that defendant has never received anything of value for said notes and that they were given without consideration. Defendant also filed a "supplemental answer" in which he alleged that the notes were made and delivered by the defendant to be delivered to the plaintiff as and for the purchase price of fifteen thousand shares of the Los Verjels Land and Water Company; that the certificates of stock claimed to have been delivered by plaintiff as a consideration therefor were delivered on or about June 18, 1913; that at the time of the delivery of said stock to the defendant, the plaintiff did not own the said shares, but the said corporation was the true owner thereof; that the plaintiff was one of the promoters and organizers of the said corporation and caused the said fifteen thousand shares of stock to be issued to himself, with other shares, as a secret profit to himself without giving any consideration therefor; that since the filing of the amended answer, the said corporation rescinded the said issue of said shares because of said fraudulent acts of plaintiff; that the defendant has received no consideration or thing of value for the promissory notes.

After a very thorough examination into all the facts surrounding the entire transaction by means of the testimony of numerous witnesses and the letters written by various parties connected with the matter, the trial court found: That the defendant executed and delivered the notes to plaintiff for a valuable consideration; that at the time of the commencement of the action, the plaintiff was the owner

and holder thereof; that no part of the principal or interest due upon said notes has been paid; that the plaintiff gave to the defendant valuable and ample consideration for each of said notes and received possession of the same upon giving such consideration; that said notes were executed and delivered to plaintiff as and for the purchase price of certain shares of the capital stock of Los Verjels Land and Water Company; that defendant received such stock and still holds the same as and for the consideration of said notes. It was also found that at the time of the delivery of the stock by plaintiff to defendant, the Los Verjels Land and Water Company was not the owner of said stock and that the plaintiff was the owner and holder thereof; that after the commencement of this action, the Los Verjels Land and Water Company attempted to rescind the issue of certain shares of stock issued to plaintiff, but that said company did not rescind said contract; that no shares of stock were ever issued to plaintiff by reason of any fraud on his part or without any consideration moving from him.

The principal attack made by appellant is that the findings relating to the delivery of the notes, the consideration therefor, and the delivery to defendant of the stock for which they were given are not supported by the evidence. We have carefully read the reporter's transcript and find that this contention is entirely without merit, in view of the rule that this court will not interfere with findings made upon conflicting evidence. The testimony of the plaintiff, the letters between the plaintiff and defendant, the letters of defendant to the bank and to one to whom the notes had been intrusted for collection, all support the conclusions of the trial court.

It is admitted that defendant agreed to purchase from plaintiff fifteen thousand shares of stock in said company for five thousand dollars, to be paid for with his notes. The negotiations were carried on principally through one Kelly, although there also appears in the record direct correspondence between the parties hereto covering the transaction, and they discussed the matter, personally, on at least one occasion.

However, defendant asserts that at the time he made this agreement with Kelly, who was representing the plaintiff, he and Kelly also made another agreement. In order to understand the contention regarding the second agreement,

it is necessary to state that it had been agreed among the parties interested, that the defendant was to assume the management of the Los Verjels Land and Water Company, in which he was one of the original stockholders; that he was to receive a monthly salary for such services, payable in stock of the company. Defendant testified that as an additional inducement to him to assume the management of this company, several of the stockholders were to donate various amounts of stock, amounting in all to twenty thousand shares, which were to be turned over to the defendant without any consideration; that of this twenty thousand shares to be so given to defendant, Kelly represented and agreed that the plaintiff, Hathaway, would contribute ten thousand shares. This constituted the alleged second agreement. Defendant maintains that he executed and delivered the notes in controversy to Kelly to be delivered to plaintiff when plaintiff should have delivered the fifteen thousand shares of stock which he had agreed to sell defendant and not before; that Kelly took the notes upon that understanding. He admits that Kelly delivered to him at the time of receiving the notes for Hathaway certificates for fifteen thousand shares of stock, which certificates were shown to have belonged to Hathaway. These fifteen thousand shares were found by the court to have been delivered in execution of the agreement of sale and as the consideration for the execution and delivery of the notes. Defendant contends that they were delivered in partial execution of said alleged second agreement between himslf and Kelly by which he was to get twenty thousand shares of stock as a bonus and that the remaining five thousand shares of this bonus stock were delivered to him directly by Turner, another stockholder who contributed the same, and that the fifteen thousand shares to be delivered by plaintiff under the agreement of sale and for which the notes were executed were never delivered at all.

Mr. Kelly, who negotiated the sale of the stock, died before the commencement of this action. Mr. Hathaway, the plaintiff, denied absolutely that he ever agreed to give defendant any stock or that he authorized anyone to make such an agreement for him. He stated that the only agreement between himself and the defendant was the agreement for a sale; that the first understanding between the parties was

for a sale of twelve thousand five hundred shares for five thousand dollars, as shown by the correspondence between them; that, later, upon the solicitation of Kelly and the representation that Kelly and other stockholders, personally, would have to give two thousand five hundred additional shares to defendant to satisfy him and induce him to act as manager of the company, Hathaway reluctantly consented to give the additional two thousand five hundred shares without additional consideration in order to prevent his associates from parting with their more meager holdings. This resulted in the transfer of fifteen thousand shares instead of twelve thousand five hundred, in consideration of the notes.

But plaintiff's positive denial of the agreement to give his stock to McGillycuddy without consideration is met by appellant with this argument: Defendant has testified that Kelly made the two agreements with him, and plaintiff was not present at the interviews and cannot contradict this: Kelly is dead and cannot speak with reference to the matter. The testimony of defendant, therefore, stands uncontradicted that Kelly made these two agreements with defendant on behalf of Hathaway and that, on behalf of Hathaway, Kelly executed only the agreement for a gift and not the one for a sale. Regardless of plaintiff's testimony that he never made this second agreement, Kelly was his agent, and it appearing without contradiction in the record that he made this agreement for a gift as the representative of plaintiff, plaintiff is bound thereby. The answer to this contention seems obvious. In the first place, if we concede that Kelly was the agent for Hathaway in the matter of the sale of this stock to McGillycuddy, this does not embrace, by implication, a further agency to make agreements for a gift of such stock. By no possible method of reasoning can an agency for the sale of stock be construed to include authority to give the same away. There is nothing in the record that could fasten upon Hathaway, by the law of either express or implied agency, any agreement that Kelly might have made with defendant—conceding that he did make one— to give away the property of Hathaway. But even if this were not true, the finding of the trial court would be conclusive against defendant as to the making of this gift agreement, because McGillycuddy's testimony regarding this

bonus stock agreement made with Kelly does not stand absolutely uncontradicted in the record, as he contends, even though Kelly was dead at the time of the trial. The contradiction of defendant's testimony appears from the following facts: After the notes involved here became due, they were sent to a bank for collection. The bank wrote McGillycuddy, demanding payment. McGillycuddy did not state then that he had received no consideration for the notes, nor that the stock for which they were given had not been delivered. On the contrary, he wrote the bank on June 13, 1914, stating that he could not make payment at that time; that the notes had been given under a verbal agreement with Kelly, as agent for Hathaway, that the time of payment was not important and that ample time would be given in extensions, etc.; that a demand for payment was not in keeping with said agreement. Kelly was alive at this time and on May 22, 1914, McGillycuddy wrote to him as follows: "I will be unable to meet this note at the time indicated. About a year ago, you, acting as agent for Mr. Hathaway, entered into a certain business arrangement with me. Certain notes were given by me and of the inducements used by you to secure said notes was a promise on behalf of Mr. Hathaway which was virtually an agreement, 'that time of payment of the notes was not important and that the time would be extended.' Some time prior, Mr. Hathaway in conversation with me stated the same. I am not asking for an accommodation but expect that the agreement entered into will be lived up to."

We then find in the record a letter from Mr. Kelly to McGillycuddy, which contradicts, by implication at least, the defendant's testimony regarding the gift agreement between Hathaway and himself, through Kelly's agency. For in this letter, Kelly disclaims knowledge of any agreement or anything which would justify the refusal to pay these notes. This letter is dated May 30, 1914, and reads as follows: "I have read with some surprise copy of letter which you recently addressed to the Bank of California regarding the note for $2,500 due June 15, 1914, drawn in Mr. Hathaway's favor wherein you state that I can tell them why you cannot take up the note when due and this is to advise you that I know of no reason why you should not, and every reason why you should, particularly as you stated to me most

positively that you would take up these notes when they were due, and I so informed Mr. Hathaway.'' In view of the fact that McGillycuddy testified that Kelly knew that the stock for the notes had not been delivered and that the stock actually delivered was delivered in execution of the gift agreement, this letter of Kelly's furnishes a flat contradiction of his testimony.

[1] Our discussion of the evidence is not intended to be exhaustive. It is our intention merely to point out that there was ample justification for the finding of the trial court that the stock was delivered to defendant by Kelly as agent of Hathaway in consideration of the execution and delivery of the notes by defendant. In view of this situation, the elaborate discussion by appellant of the evidence appearing in the record which supports defendant's contention regarding this matter is quite immaterial.

The next objection of appellant is to the admission of certain testimony of Mr. Hathaway, the plaintiff. This had reference to conversations between Hathaway and Kelly. Hathaway testified that after he had written the first letter to McGillycuddy offering him the stock for five thousand dollars and after all arrangements had been made, he sent Kelly with the two notes to McGillycuddy for signatures; that in an hour or so Kelly returned and stated that Mc-Gillycuddy had said that he would not sign the notes until he got the stock. There was other testimony regarding the conversations between Kelly and Hathaway, and statements made by Kelly as to what McGillycuddy had said and done. Appellant contends that this testimony was hearsay and was improperly admitted, as it was not binding upon McGillycuddy. Defendant introduced similar hearsay testimony by McGillycuddy regarding statements made by Kelly to him with reference to Hathaway's statements and actions concerning the transaction. But appellant seeks to differentiate the two cases by contending that as to Hathaway, Kelly was an agent, and, therefore, his statements were binding upon Hathaway; but as to McGillycuddy, he was not an agent and could not bind him by any statements. The situation here was peculiar. All three men were interested in the success of the company. They were all original stockholders and apparently working earnestly to achieve success. Kelly appears to have been actuated as much, if not more, by a

desire to satisfy McGillycuddy and keep him as the manager of the company than by any desire or duty to sell stock belonging to Hathaway. Indeed, Hathaway stated very positively that he did not desire to sell his stock, and only agreed to do so upon the repeated solicitations of Kelly and upon his representations that McGillycuddy would not be satisfied to work with the company unless he owned more of its stock. The full circumstances concerning Kelly's activities were disclosed to both parties. Under such a state of facts, he might well be the agent of both; indeed, a reading of the entire record induces such an opinion. The trial court, evidently, so concluded and upon this theory admitted the testimony of which complaint is made. We cannot say that such a conclusion was unwarranted, and, consequently, we do not think it is one with which we are called upon to interfere. However, though we were to concede that the testimony was improperly admitted against McGillycuddy, we should still be bound to say that we do not consider it prejudicial under all the facts disclosed by the record. At the most, it was but cumulative evidence of matters upon which the record contains some other evidence. It would not, therefore, compel a reversal of this judgment.

The only other point discussed by appellant is with reference to the allowance of interest. The notes provide on their face that they are to bear interest from "due date," which was June 15, 1914. They are dated June 15, 1913. The trial court in its judgment, by an inadvertence, allowed interest from the date of the notes. This makes the judgment excessive to the extent of three hundred dollars. Respondent does not oppose appellant's contention upon this matter, but asserts that upon discovery of the error he offered to enter into a stipulation with defendant to reduce the judgment by three hundred dollars. Appellant admits this and states that he declined to enter into such stipulation, fearing to prejudice his rights upon appeal. These matters are recited herein merely as affecting the question of allowance of costs upon appeal in modifying the judgment.

The judgment appealed from is modified by reducing the interest allowed by the sum of three hundred dollars, so that the same will read "two thousand dollars as interest

from the 15th day of June, 1914." In all other respects, the judgment is affirmed, the respondent to recover his costs upon this appeal.

Sturtevant, J., and Nourse, J., concurred.